# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOYCE HERNANDEZ, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| MICHAEL J. ASTRUE, | § | SA-09-CV-0155 XR (NN) |
| **Commissioner of the Social** | § | |
| **Security Administration,** | § | |
| | § | |
| Defendant. | § | |

# REPORT AND RECOMMENDATION
# OF THE UNITED STATES MAGISTRATE JUDGE

**TO:** Honorable Xavier Rodriguez
United States District Judge

## Introduction

Plaintiff Joyce Hernandez brought this action for judicial review of the final decision of the Commissioner of the Social Security Administration (the Commissioner), determining that Hernandez is not disabled for the purposes of the Social Security Act (the Act) and denying Hernandez's applications for Disability Insurance Benefits (DIB) and Supplemental Security Insurance (SSI). Hernandez asks the district court to reverse the Commissioner's decision and to render judgment in her favor. In the alternative, Hernandez asks the district court to reverse the decision and remand the case for further proceedings.

After considering Hernandez's brief in support of her complaint,[1] the brief in support of

---

[1]Docket entry # 11.

the Commissioner's decision,[2] Hernandez's reply brief,[3] the record of the SSA proceedings, the pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, I recommend affirming the Commissioner's decision.

I have jurisdiction to enter this report and recommendation under 28 U.S.C. § 636(b) and this district's general order, dated July 17, 1981, referring for disposition by recommendation all cases where a plaintiff seeks review of the Commissioner's denial of the plaintiff's application for benefits.[4]

## Jurisdiction

The district court has jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

## Administrative Proceedings

Based on the record in this case, Hernandez exhausted her administrative remedies prior to filing this action in federal court. Hernandez applied for DIB on September 13, 2004, alleging disability beginning on February 1, 2003.[5] The Commissioner denied the application initially and on reconsideration.[6] Hernandez then asked for a hearing before an ALJ.[7] An ALJ held a

---

[2]Docket entry # 12.

[3]Docket entry # 13.

[4]*See* Local Rules for the Western District of Texas, appx. C, p. 10.

[5]SSA record, p. 50.

[6]*Id*. at pp. 21-22.

[7]*Id*. at p. 35.

2

hearing on December 15, 2005.[8] The ALJ issued a decision on September 13, 2006, concluding that Hernandez is not disabled within the meaning of the Act.[9] Hernandez asked the Appeals Council to review the decision[10] and then filed applications for DIB and SSI, alleging disability beginning on September 14, 2006.[11] The Commissioner denied the second applications.[12] On March 16, 2007, the Appeals Council declined to review the unfavorable decision on the first application, determining no reason existed for reviewing the decision.[13] Hernandez appealed the Commissioner's decision. The district court reversed the ALJ's decision because the ALJ did not consider Dr. Robert B. Gledhill as a treating physician.[14] The Appeals Council then directed the ALJ to consolidate Hernandez's claims in the first and second applications and to issue a decision on the consolidated claims.[15] The ALJ conducted a second hearing on April 9, 2008,[16] and issued a second unfavorable decision on June 24, 2008.[17] The ALJ's second decision became the final decision of the Commissioner for the purpose of the district court's review

---

[8]*Id*. at p. 220.

[9]*Id*. at p. 10.

[10]*Id*. at p. 8.

[11]*Id*. at pp. 351 & 593.

[12]*Id*. at p. 303 (on Feb. 22, 2007).

[13]*Id*. at p. 4.

[14]*Id*. at p. 295.

[15]*Id*. at 262.

[16]*Id*. at p. 262.

[17]*Id*. at p. 259.

pursuant to 42 U.S.C. § 405(g). Hernandez filed this action seeking review of the Commissioner's decision on February 26, 2009.[18]

## Issue Presented

Is the ALJ's decision that Hernandez not under a "disability," as defined by the Act, supported by substantial evidence and does the decision comport with relevant legal standards?

## Analysis

**A. Standard of Review**

In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[19] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[20] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[21]

If the Commissioner's findings are supported by substantial evidence, then they are

---

[18]*See* docket entry # 1.

[19]*Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

[20]*Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[21]*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

conclusive and must be affirmed.[22] In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[23] Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[24] Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[25]

**1. Entitlement to Benefits**

Every individual who meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive benefits.[26] The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[27] A claimant shall be determined to be disabled only if his physical or

---

[22]*Martinez*, 64 F.3d at 173.

[23]*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[24]*Martinez*, 64 F.3d at 174.

[25]*Id*.

[26]42 U.S.C. § 1382(a)(1) & (2).

[27]42 U.S.C. § 1382c(a)(3)(A).

5

mental impairment or impairments are so severe that she is unable to not only do her previous work, but cannot, considering her age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she applied for work.[28]

### 2. Evaluation Process and Burden of Proof

The Commissioner's regulations provide that disability claims are to be evaluated according to a five-step process.[29] A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[30]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[31] If so, the claimant will be found not disabled regardless of her medical condition or her age, education, or work experience.[32] The second step involves determining whether the claimant's impairment is severe.[33] If it is not severe, the claimant is deemed not disabled.[34] In the third step, the Commissioner compares the severe impairment with

---

[28] 42 U.S.C. § 1382c(a)(3)(B).

[29] 20 C.F.R. §§ 404.1520 and 416.920.

[30] *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[31] 20 C.F.R. §§ 404.1520 and 416.920.

[32] *Id.*

[33] *Id.*

[34] *Id.*

those on a list of specific impairments.[35] If it meets or equals a listed impairment, the claimant is deemed disabled without considering her age, education, or work experience.[36] If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional capacity and the demands of her past work.[37] If the claimant is still able to do her past work, the claimant is not disabled.[38] If the claimant cannot perform her past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given her residual capacities, age, education, and work experience, to do other work.[39] If the claimant cannot do other work, she will be found disabled. The claimant bears the burden of proof at the first four steps of the sequential analysis.[40] Once the claimant has shown that she is unable to perform her previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account her exertional and nonexertional limitations, able to maintain for a significant period of time.[41] If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that she is unable to perform the alternative work.[42]

---

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Leggett*, 67 F.3d at 564.

[41] *Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

[42] *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

**B. Findings and Conclusions of the ALJ**

In the instant case, the ALJ reached his decision at step five. At step one, the ALJ determined that Hernandez had not engaged in substantial gainful activity since her original alleged onset date.[43] At step two, the ALJ determined that Hernandez has the following severe impairments: history of scoliosis status post 1985 surgical treatment with Harrington's rods, a herniated nucleus pulposus at L4-L5, degenerative disc disease of the cervical spine, and depression.[44] At step three, the ALJ determined that Hernandez does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.[45] At step four, the ALJ determined that Hernandez has the residual functional capacity to perform light and sedentary work with limitations.[46] At step five, the ALJ found that Hernandez is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. The ALJ concluded that Hernandez is not disabled under the Act.[47]

---

[43] SSA record, p. 264.

[44] *Id*. at p. 265.

[45] *Id*.

[46] *Id*. at p. 266. The limitations are: Hernandez can stand/walk combined limited to 6 hours of an 8-hour day; no ladders, ropes or scaffolds; climbing stairs is limited to 10% of the workday; no dangerous balancing; occasionally stooping, kneeling, crouching, and crawling and collectively no more than one third of the day; neck range of motion limited to a reduction of one-third in each direction (up, down, left and right); and Hernandez is limited to simple jobs with some contact with others, but not excessive or full time contact with others.

[47] *Id*. at p. 274.

**C. Whether Substantial Evidence Supports the Commissioner's Decision**

At the time of the second hearing, Hernandez was a 33-year-old mother of four children. As a child, Hernandez developed scoliosis—an abnormal side-to-side curvature of the spine—and received surgical treatment with Harrington's rods.[48] Hernandez worked for several years, but stopped working when she was pregnant with her third child.[49] She alleges that she became disabled two weeks after the birth of her third child due to back pain and depression.

Hernandez's administrative record is remarkable for the absence of medical evidence indicating Hernandez is disabled. The bulk of the record is comprised of agency paperwork, documents related to the remand of the ALJ's first decision, medical records for Hernandez's four pregnancies, and reports by state agency doctors. Treatment notes from Dr. Robert B. Gledhill—an orthopedic surgeon—are the only relevant treatment records. These treatment notes document five visits. At the time of the first hearing, Hernandez had seen Dr. Gledhill three times. Hernandez complained during her first appeal that the ALJ failed to treat Dr. Gledhill as a treating physician. The district judge agreed and remanded the case. On remand, the ALJ treated Dr. Gledhill as a treating physician, but gave little weight to Dr. Gledhill's opinions about Hernandez's functional limitations. Hernandez complains about the ALJ's treatment of Dr. Gledhill's opinion in this appeal.

---

[48]"A surgical management of scoliosis (sidewise bending of spine) utilizing metal rods and hooks by which traction is exerted on the concave side of the curve (of the spine) and pressure is exerted on the convex side." J.E. Schmidt, M.D., 3 Attorney Dictionary of Med. 115439 (Matthew Bender 2005), *available at* LexisNexis.com.

[49]SSA record, p. 105 (letter from Dr. Jorge A. Chavez stating that Hernandez required bed rest and could not return to work until further notice); p. 180 (internal medicine consultative exam by Dr. Jorge A. Estrada, dated Oct. 18, 2004, reporting that Hernandez stated that she quit working because of pregnancy).

"[O]rdinarily the opinions, diagnoses and medical evidence of a treating physician who is familiar with the claimant's injuries, treatment, and responses should be accorded considerable weight in determining disability. The ALJ may give less weight to a treating physician's opinion when 'there is good cause shown to the contrary[.]'"[50] In this case, the ALJ provided good cause for giving little weight to Dr. Gledhill's opinion about Hernandez's functional limitations.

Between the first and second hearing, Hernandez saw Dr. Gledhill once more. Hernandez saw Dr. Gledhill for a final visit two weeks after the second hearing. At the last visit, Dr. Gledhill opined that Hernandez: (1) can sit, stand or walk for less than one hour; (2) occasionally lift up to 5 pounds; (3) occasionally carry up to 10 pounds; (4) has marked limitation in grasping, turning, and twisting objects and using her arms; (5) must get up and move around after every 5-10 minutes; and (6) can do no competitive work on sustained basis.[51]

The ALJ determined that this opinion is inconsistent with other medical evidence and not supported by the record as a whole. The ALJ's explanation follows:

> Dr. Gledhill's opinion is inconsistent with other medical evidence and is not supported by the record as a whole. For instance, the claimant self-reported she does not have difficulty sitting, driving, reaching, using her hands, or doing personal care (Exh. 17F/5), yet Dr. Gledhill indicates the claimant can sit less than 1 hour in an 8 hour day, and only lift and carry less than 10 lbs, with marked limitations in reaching and grasping. (Exh. 29F/3-4). Further, it would be hard to imagine taking care of a child from infant age to age 2 years without ever lifting the child. (It is also noteworthy claimant had a full range of motion in October 2005 yet by December she had a moderate limitation in range of motion in all directions despite no intervening trauma in less than 2 months, Ex. R3, R17. No explanation for this vast change was suggested. Indeed, the difference was not even noted.) (Also see Ex. 17F7, January 2007 – neck full range of motion.) Also see Ex. 14F8, a cervical MRI described as far more severe than as described

---

[50]*Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000) (internal citations omitted).

[51]SSA record, pp. 584-90.

by the radiologist who did the MRI. Contrary to Ex. 29F5, claimant does not have "constant" concentration problems. At Ex. 29F4, a minor hand problem found at Ex. R17 is now wrongly characterized as marked, and 29F2 does not even claim hand pain. All this suggests Dr. Gledhill's views are entitled to little weight.[52]

Hernandez criticizes the ALJ for making comparisons she characterizes as disconnected in time,[53] but there are no other comparisons to make because there are no other treatment records. Nothing supports Dr. Gledhill rather exaggerated opinion of Hernandez's limitations. A summary of Dr. Gledhill's treatment notes demonstrates this point.

Hernandez first saw Dr. Gledhill on October 12, 2005—over two and a half years after she alleges she became disabled because of back pain. Hernandez received no treatment for her back during that time period even though she had health care insurance. Hernandez visited Dr. Gledhill for the first time about one month after the birth of her fourth child. At that visit, Dr. Gledhill determined Hernandez had a full range of motion in her cervical spine (the area of the neck), but that her range of motion in the lumbar spine (the lower back) was markedly restricted. Dr. Gledhill found a bit of tenderness in the cervical spine and marked tenderness at the L5-S1 junction. Dr. Gledhill characterized the childhood lumbar fusion as an excellent fusion and observed that Xrays of the lumbar spine showed very little in terms of abnormality.[54] Dr. Gledhill opined that Hernandez had a herniation at L5-S1 (the lower back at about the waistline) and sent Hernandez for an MRI of her lumbar spine.[55] When Hernandez returned on November

---

[52]SSA record, p. 271.

[53]Docket entry # 11, p. 12 (complaining that the ALJ compared Dr. Gledhill's findings with year-old findings of a consultative examiner).

[54]SSA record, p. 202.

[55]*Id*. at p. 200.

2, 2005, Dr. Gledhill stated that the MRI showed decreased disci and desiccation of the L4-L5 (the joint above L5-S1).[56] Dr. Gledhill diagnosed Hernandez with herniated nucleus pulposus at L4-L5. Dr. Gledhill prescribed a back brace and recommended that Hernandez stop breast-feeding her baby so he could prescribe medication. Hernandez returned a month later complaining about severe neck pain. Dr. Gledhill sent Hernandez for a MRI of her cervical spine.[57] The MRI showed no basis for severe neck pain. The radiologist who read the MRI opined as follows: "Very mild multilevel disc bulges as described above. This causes mild flattening of the anterior surface of the thecal sac at various levels, no evidence of spinal canal stenosis, significant disc pathology or neural foraminal narrowing."[58] Dr. Gledhill instructed Hernandez to stop nursing, prescribed an anti-inflammatory analgesic, and sent Hernandez to physiotherapy.[59] Hernandez returned five weeks later after completing her physiotherapy. At that visit—on January 18, 2006—Dr. Gledhill reported that Hernandez tested negative for inflammation and autoimmune diseases to include rheumatoid arthritis.[60] Although he stated that Hernandez has multiple abnormal disks in her cervical spine, Hernandez's MRI does not support

---

[56]*Id*. at p. 448. "Herniated nucleus pulposus is a condition in which part or all of the soft, gelatinous central portion of an intervertebral disk is forced through a weakened part of the disk, resulting in back pain and nerve root irritation." Medline Plus, *available at* http://www.nlm.nih.gov/medlineplus/ency/imagepages/9700.htm.

[57]Hernandez declined an MRI during the first visit.

[58]SSA, p. 464. Hernandez later testified that she declined the MRI because she had her baby with her. *Id*. at p. 236. Hernandez did not explain why she took an infant with her to her doctor's appointment even though she was allegedly experiencing disabling pain and despite her testimony that her mother helps her with the children every day.

[59]*Id*. at p. 205.

[60]*Id*. at p. 457.

that assessment. Hernandez's last visit to Dr Gledhill was on April 14, 2008. It is not possible to confirm whether Dr. Gledhill actually examined Hernandez because the record contains no treatment note for the visit. The record contains only answers to a multiple impairment questionnaire setting forth Dr. Gledhill's opinion about Hernandez's functional limitations.

The medical evidence discussed above does not support Dr. Gledhill's opinion about Hernandez's limitations. That Dr. Gledhill recommended no treatment is at odds with the level of restriction he suggested. Considering Hernandez's allegation of disabling pain, a treatment option is appropriate. For example, the state agency doctor observed on January 29, 2007, that Hernandez had never had one of the most common treatments for neck and low back pain—epidural steroid injections.[61] The examiner opined that Hernandez's condition—restricted range of movement in the lumbar spine and cervical disk disease—can be stabilized and improved and function maintained with appropriate medical evaluation and treatment,[62] but Dr. Gledhill made no recommendation for treatment. The ALJ provided adequate reasons for giving Dr. Gledhill's opinion little weight. The ALJ did not did not err in his assessment of Dr. Gledhill's opinion.

That said, the question remains whether substantial evidence supports the Commissioner's decision. With regard to Hernandez's allegations about lower back and neck pain, the following evidence supports the Commissioner's decision: (1) a 2004 state-agency

---

[61] SSA record, p. 482.

[62] *Id.* at 487.

doctor's examination,[63] (2) a 2004 physical residual functional capacity assessment,[64] (3) a 2007 state-agency doctor's examination,[65] and (4) a 2007 physical residual functional capacity assessment.[66]

Hernandez also complains that the ALJ erred by not characterizing her headaches as a severe impairment. Identifying severe impairments is a step-two determination. As the party with the burden, Hernandez was required to show that headaches significantly limit her physical or mental ability to do basic work activities.[67] Hernandez did not make this showing. The only evidence about headaches is Hernandez's subjective complaints.[68] "The ALJ must consider subjective evidence of pain, but it is within his discretion to determine the pain's disabling

---

[63]*Id*. at pp. 182-85 (stating that Hernandez was in no apparent distress, reporting that she can squat and rise from a squatting position, and observing a mild outward curvature of the thoracic spine).

[64]*Id*. at 187-88 (opining that Hernandez can occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds; stand and/or walk about 6 hours in an 8-hour day; sit for about 6 hours in an 8-hour day; and frequently stoop or crouch).

[65]*Id*. at p. 485-88 (observing that Hernandez moved freely and spontaneously throughout the examination, reporting normal spine alignment, and stating that Hernandez is able to sit, stand and move about without restriction).

[66]*Id*. at pp. 494-95 (opining that Hernandez can occasionally lift and/or carry 20 pounds and frequently lift/carry 10 pounds; stand/walk or sit about 6 hours in an 8-hour day; occasionally climb and stoop; and frequently balance, kneel, crouch and crawl.

[67]*See* 20 C.F.R. §§ 404.1520(c), 416.921(a). "An impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (citation omitted; alteration included).

[68]SSA, p. 235 (testifying on Dec. 15, 2005, that she has been having bad headaches for a few months); p. 365 (asserting at the time of her second application that headaches limit her ability to work); p. 628 (testifying on Apr. 9, 2008 she suffers from migraine headaches).

nature. Such determinations are entitled to considerable deference."[69] In this case, the ALJ explained in detail why he questioned Hernandez's credibility. Other than Hernandez's testimony that she has bad headaches, the only other reference in the record about headaches is a note where Dr. Gledhill recorded a complaint about headaches,[70] but Dr. Gledhill made no diagnosis relating to headaches and prescribed no treatment. Hernandez did not carry her burden to show that headaches significantly limit her physical or mental ability to do basic work activities. The ALJ did not err in this step-two determination.

Finally, Hernandez challenges the ALJ assessment of her residual functional capacity (RFC), both physical and mental. RFC is a step-four determination.

> RFC is what an individual can still do despite . . . her functional limitations and restrictions caused by . . . her medically determinable physical or mental impairments. It is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect . . . her capacity to perform work-related physical and mental activities.[71]

In this case, the ALJ determined that Hernandez can perform light and sedentary work with the follow limitations: stand/walk combined limited to 6 hours of an 8-hour day; no ladders, ropes or scaffolds; climbing stairs is limited to 10% of the workday; no dangerous balancing; occasionally stooping, kneeling, crouching, and crawling and collectively no more than one third of the day;

---

[69] *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991) (internal citations omitted).

[70] *Id*. at p. 204 (stating that his patient has a lot of headaches). See also p. 483 (state-agency doctor's report that Hernandez complained about headaches, but that she has not been see by a neurologist).

[71] SSR 96-9p: Policy Interpretation Ruling Titles II & XVI: Determining Capability to Do Other Work--Implications of a Residual Functional Capacity or Less than a Full Range of Sedentary Work (07/02/96 ).

15

neck range of motion limited to a reduction of one-third in each direction (up, down, left and right); and limited to simple jobs with some contact with others, but not excessive or full time contact with others. Although Hernandez disagrees with this assessment, substantial evidence supports the assessment.

Where the record is insufficient to assess RFC, the ALJ should make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC. As demonstrated above, Hernandez's medical records provide little for assessing functional limitations due to physical impairments. The ALJ sought out evidence to assess Hernandez's RFC. In October 2004, the ALJ sent Hernandez for an internal consultative examination. About Hernandez's back, the examiner reported that Hernandez could squat and arise from a squatting position, bend over up to 60 degrees, and walk tiptoe and tandem without difficulty.[72] The examiner observed mild kyphosis of the upper dorsal spine—curving of the spine that causes a bowing of the back—but documented no limitation in range of motion. Another state-agency doctor reviewed the report and Dr. Gledhill's notes and opined that Hernandez had the following RFC: occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds; stand and/or walk about 6 hours in an 8-hour day; sit for about 6 hours in an 8-hour day; and frequently stoop or crouch.[73] After the case was remanded, the ALJ sent Hernandez for a second consultative exam. About Hernandez's back, the examiner reported that Hernandez moved freely and spontaneously throughout the exam; was able to forward bend to only the level of mid-thighs, but observed to sit at 90 degrees without complaints; sat and rose without pain or difficulty; and could sit and

---

[72]SSA, p. 182.

[73]*Id*. at pp. 186-93.

16

move without restriction.[74] The examiner observed no kyphosis, lordosis—inward curve of the lumbar spine—or scoliosis except scoliosis noted at thoracic level, and found that cervical and thoracic spine range of motion was normal and within functional limits.[75] Another state-agency doctor then reviewed the report and the other evidence in the record and opined that Hernandez had the following RFC: occasionally lift and/or carry 20 pounds and frequently lift/carry 10 pounds; stand/walk or sit about 6 hours in an 8-hour day; occasionally climb and stoop; and frequently balance, kneel, crouch and crawl.[76] Considering this evidence, the ALJ's assessment of Hernandez's RFC is very generous.

Hernandez did not complain about a mental impairment until her second application. She then based disability, in part, on depression and loss of memory. Because the record was virtually devoid of evidence of depression,[77] the ALJ sent Hernandez for a psychological examination in January 25, 2007. The examiner determined that Hernandez was significantly depressed. The examiner made the following diagnosis: major depression, severe with psychotic features; panic disorder with agoraphobia; and borderline intellectual functioning. The examiner opined that Hernandez was incapable of managing her own benefits. The ALJ rejected this opinion in part because Hernandez denied having problems managing money.[78] The ALJ also

---

[74]*Id*. at pp. 486-87.

[75]*Id*.

[76]Id. at pp. 494-95.

[77]*See id*. at pp. 580-82 (treatment notes from Dr. Alexander Mora for Oct. 2, 2007 and Oct. 16, 2007, prescribing medication for depression).

[78]*Id*. at p. 625.

rejected the diagnosis of agoraphobia because Hernandez drives her children to school and even drove herself to the examination that formed the basis of the diagnosis of agoraphobia.[79] Although Hernandez criticizes the ALJ for advancing his own unfounded medical opinion, the ALJ is not required to accept a medical opinion that lacks foundation. A diagnosis of agoraphobia lacks foundation because agoraphobia is the "condition of having an irrational fear of being in a public place . . . which would be difficult to leave in a hurry if something . . . happens."[80] Driving about town is inconsistent with that type of fear.

Another state-agency doctor reviewed the psychological report and the evidence in Hernandez's file and opined that Hernandez can understand, remember and carry out only simple instructions, make simple decisions, attend and concentrate for extended periods, interact adequately with co-workers and supervisors, and respond appropriately to changes in routine work setting.[81] In addition, Hernandez testified that she once took medication for depression, she

---

[79]*Id*. at p. 270.

[80]J.E. Schmidt, M.D., 1 Attorney Dictionary of Med.66946 (Matthew Bender 2005), *available at* Lexisnexis.com.

[81]SSA record, p. 491. About particular abilities, the state-agency doctor made the following findings: (1) not significantly limited in the ability to remember locations and work-like procedures, to understand and remember very short and simple instructions, to carry out very short and simple instructions, to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, to sustain an ordinary routine without special supervision, to work in coordination with or proximity to others without being distracted by them, to interact appropriately with the general public, to ask simple questions or request assistance to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, to respond appropriately to changes in the work setting, to be aware of normal hazards and take appropriate precautions, to travel to unfamiliar places, and to set realistic goals or make plans independently of others; (2) moderately limited in the ability to maintain attention and concentration for extended periods, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods, and to accept

18

stopped taking the medication because she felt better.[82]  This evidence constitutes substantial evidence supporting the ALJ's assessment of Hernandez's RFC.

### Recommendation

Because the ALJ made no error of law and because substantial evidence supports the ALJ's determinations, I recommend DENYING Hernandez's request for relief (docket entry # 1) and AFFIRMING the Commissioner's decision.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[83]  **Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge.**  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de*

---

instructions and respond appropriately to criticism from supervisors; and (3) markedly limited in the ability to understand and remember detailed instructions and to carry out detailed instructions. *See id*. at pp. 489-90.

[82]*Id*. at p. 627.

[83]28 U.S.C. §636(b)(1); FED. R. CIV. P. 72(b).

*novo* determination by the district court.[84] Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[85]

**SIGNED** on January 29, 2010.

*[signature]*
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[84]*Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

[85]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).